**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

Ananta Sustainability, LLC,
an Ohio limited liability company,

Plaintiff,

v.

Civil Action No.: 23-12229

LNG Energy, Inc. d/b/a LNG Electric,
a Massachusetts corporation, and
Taylor Weaver, an individual,

Defendants.

---

**COMPLAINT**

Plaintiff Ananta Sustainability, LLC, ("Ananta"), for its Complaint against LNG Energy, Inc. ("LNG") and Taylor Weaver (together, "Defendants"), states and alleges as follows:

**NATURE OF THE CASE**

1. This is an action by Ananta for breach of contract and a related tort claim against LNG, its counterparty to a Joint Marketing Agreement ("Agreement") governing the parties' business relationship. Defendant Weaver is, upon information and belief, the sole owner and controller of LNG.

2. Ananta is a tightknit, owner-operated marketing and sustainability solutions company that helps its clients – hotels, motels, apartments, and other customer-oriented businesses – with green energy solutions. Ananta helps its customers identify and implement sustainability solutions such as LED lighting, electric vehicle charging, solar, and other energy efficient technologies that help its customers reduce their energy consumption, costs, overhead, and carbon footprint.

3. Ananta's principals have a broad network of valued clients and customers across

the United States, earned through hard work invested over more than 30 combined years of work and experience in the industry.

4. Ananta contracted with LNG to provide electric vehicle charging stations to Ananta's clients and customers. Ananta offered to help LNG expand its electric vehicle charging business by helping LNG identify and engage with new potential customers across the United States.

5. Ananta upheld its end of the bargain in the Agreement. LNG did not.

6. Indeed, LNG has completely failed in its obligations under the Agreement by (i) failing to pay Ananta for the successful marketing, client-connecting, and consulting work it performed, and, even more detrimental to Ananta and Ananta's customers, (ii) utterly failing to complete installation of *any* of the electric vehicle charging station projects that Ananta arranged to have installed for its customers.

7. LNG also fundamentally violated the spirit and purpose of the Agreement, intentionally frustrating Ananta's (and its customers') rights to receive the benefits of the Agreement, in breach of the implied covenant of good faith and fair dealing implied in every contract under Massachusetts law.

8. Further in addition to LNG breaching its contractual obligations to Ananta, LNG's principal, Mr. Weaver, has tortiously interfered with Ananta's customer relationships by wrongfully interfering with Ananta's existing and future customer relationships.

9. After the business relationship deteriorated due to LNG's fundamental failures, Weaver has repeatedly communicated with Ananta's clients and customers, with the intent and improper motive of interfering with and diminishing Ananta's relationships with his customers, and using improper means.

10. Ananta has been and continues to be seriously damaged by LNG's failures.

11. Through this action, Ananta respectfully seeks to remedy the wrongs committed

by LNG.

**PARTIES, JURISDICTION AND VENUE**

12. Plaintiff Ananta is a limited liability company organized and existing under the laws of the State of Ohio, with its principal place of business in Columbus, Ohio.

13. Defendant LNG is a corporation incorporated and existing under the laws of the Commonwealth of Massachusetts, with, upon information and belief, its principal place of business in Denver, Colorado.

14. Defendant Weaver is, upon information and belief, a resident of the State of Colorado. Plaintiff's information and belief is based upon Weaver's employment with a law firm's office in Denver, Colorado.

15. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff (Ohio) and Defendant (Massachusetts), and because the amount-in-controversy in this case exceeds $75,000.00.

16. This Complaint also alleges violations of state law. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1338(b) and § 1367(a).

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant LNG is incorporated in this District.

18. Moreover, venue is proper in this District because there is a venue clause in the governing Agreement at issue in this litigation, which requires that a lawsuit be brought in this District.

19. This Court has personal jurisdiction over Defendant LNG because LNG is incorporated under the laws of the Commonwealth of Massachusetts, and because LNG submitted to this Court's personal jurisdiction via the Agreement.

20. This Court has personal jurisdiction over Defendant Weaver because he

purposefully availed himself of the privilege of conducting business activities within Massachusetts by, among other things, signing the Agreement, which contains a venue selection clause identifying Massachusetts as the venue for any dispute over the Agreement.

## ALLEGATIONS COMMON TO ALL CLAIMS

### The Agreement

21. The parties entered into the Agreement on or about March 28, 2023.

22. The Agreement is a simple and straightforward five-page agreement that provides for, in effect, a joint venture between Ananta and LNG to identify, market to, and provide electric vehicle charging station services to Ananta's clients and other potential customers to be identified and marketed to in accordance with the Agreement.

23. The Agreement essentially provides that LNG would pay Ananta for certain marketing, media outreach, customer procurement, and consulting services ("Services"), and would pay Ananta for each charging port installed by LNG, for each lease executed by a customer, and a share of profits for each port.

24. Crucially, the Agreement provides that LNG shall have six (6) months from the date that Ananta procures a lease from a customer to install the charging station. Agreement, Ex. A at Procurement ¶ 1 ("LNGE shall have six months from the date such executed lease is provided to LNGE to place stations on any leases procured; subject to any delays caused by any property manager or property owner.").

25. The Agreement also provides that LNG was responsible for installing, maintaining, and operating the electric vehicle charging stations, and would share a portion of those proceeds with Ananta. Agreement, Ex. A at Service Fees and Bonus ¶ 1.

26. The Agreement provides substantial incentives for Ananta to succeed in sourcing and signing up leases. For one, the Agreement provides for payment to Ananta of 20% of the net operating profit from each electric vehicle charging station, for a term of ten

years. *See* Agreement, Ex. A, Service Fees and Bonus ¶ 1.

27. The Agreement provides that LNG will pay Ananta $300 for each charging station installed, with a minimum of two such ports installed at each location, and an additional $300 for each port at each location, with a maximum of four ports per location.

28. Further, the benefits provided to Ananta under the Agreement in large part take the form of performance payments based on milestones, in the form of milestone payments, on a tiered schedule, available to Ananta for its successes in obtaining leases from clients/customers. The following is the payment breakdown for each property, assuming just two ports per property:

a. a $60,000 payment to Ananta for the first 100 properties signed on;

b. a $90,000 payment to Ananta for the next 150 properties signed on;

c. a $150,000 payment to Ananta for the next 250 properties signed on; and

d. two additional $150,000 payments for the next 250 properties, and for the next 250 properties after that, up to 1,000 properties in total.

*See* Agreement, Ex. A, Service Fees and Bonus ¶ 2

29. The Agreement further provided that Ananta would be paid an additional $50,000 or $65,000 if Ananta secured 100 leases within 60 days of execution of the Agreement. *See* Agreement, Ex. A, Service Fees and Bonus ¶ 3.

**<u>Ananta's Performance Under The Agreement</u>**

30. Since the parties entered into the Agreement, Ananta has committed substantial time, effort, expertise, and financial resources to complying with the Agreement.

31. Indeed, within a matter of 4 months, Ananta succeeded in signing on 81 customer leases representing 304 level 2 EV Chargers for LNG, in accordance with the Agreement.

32. Seeing Ananta's gangbusters success in signing up clients, LNG balked, and

began slow-pedaling its responses to Ananta's leases.

33. Ananta quickly activated its broad network of clients and customers, and has engaged new clients and potential customers across the United States.

34. Indeed, in accordance with the contract, Ananta presented a total of 81 clients, with partially executed leases, to LNG for the installation of charging stations.

35. Ananta's successful work in identifying and sourcing clients for LNG required significant investments of time, effort, skill, and money.

36. As of this filing, Ananta has provided to LNG 81 leases signed by customers, and only has secured from LNG ten (10) countersigned lease agreements with Ananta's clients.

37. Ananta also has presented to LNG an additional 71 partially executed leases, upon which LNG has taken no action.

38. As of this filing, upon information and belief, LNG effectively has taken no action with respect to those partially executed leases.[1] Ananta's basis for its information and belief is that Ananta's clients and customers have informed Ananta that work is not progressing on their charging station projects. Indeed, many clients have contacted Ananta specifically asking for assistance with getting their charging station projects off the ground.

39. As far as Ananta knows, LNG has taken no further meaningful action with respect to those leases, in violation of its obligations under the Agreement.

**LNG's Wrongful Conduct**

40. LNG has fundamentally failed to perform under the Agreement.

41. Despite that Ananta presented 81 partially signed leases to LNG, LNG has failed

---

[1] To the best of Ananta's knowledge, since being provided with the executed leases, LNG has installed **two** charging stations across the country, both at one location in Lima, Ohio, which location is supposed to have four charging stations in total. In other words, LNG has not finished a single project under the JMA.

to (a) complete any project at any of Ananta's clients' locations[2], and (b) pay Ananta for any of its work.

42. Neither LNG nor Weaver have provided any explanation for the failure to countersign the leases. And both LNG and Weaver have failed to communicate with Ananta's customers and clients regarding the status of the leases and the project. Several clients have reported to Ananta that LNG and Weaver have not substantively responded to their several communications regarding their projects.

43. At bottom, LNG dithered and repeatedly failed (or refused) to act promptly on the partially executed leases presented to LNG by Ananta, leaving Ananta's customers and clients in the dark and without progress on their projects.

44. LNG refused to professionally and effectively respond to the leases provided to it because LNG's principal (and, upon information and belief, only manager) Taylor Weaver, has another full-time job as an associate attorney in the Denver office of the law firm Squire Sanders LLP, or has actual malice against Ananta.[3]

45. Egregiously, against the above-described background of failures to perform by LNG, LNG's principal, Mr. Weaver, threatened Ananta and its principals with potential claims for tortious interference if Ananta were to communicate *with Ananta's own customers* regarding LNG's ongoing failures on the projects.

**Weaver's Misconduct**

46. Weaver, began a "damage control" campaign to try to explain away LNG's failures by laying the blame on Ananta.

47. For example, in or about August 2023, Weaver communicated with Ananta's

---

[2] To the best of Ananta's knowledge, LNG has installed two of four required stations at one client location.

[3] *See* https://www.squirepattonboggs.com/en/professionals/w/weaver-taylor-c (last visited September 20, 2023).

customers, including one – the "Charge CEO" – regarding that customer's stalled project.

48. During that conversation – and, upon information and belief, other conversations with other Ananta customers and clients – Weaver falsely stated that Ananta was to blame for project delays, and that Ananta was incapable of delivering on the project.

49. When Weaver made those statements, Weaver knew that Ananta's only responsibility under the Agreement was to market to clients and customers and to present to LNG partially signed leases with customers. At that point, Weaver knew, that LNG was completely and solely responsible for the project installation.

50. Weaver thus employed wrongful means, in the form of false and disparaging statements that Weaver knew to be false, to encourage Ananta's customers to break their ongoing and future business relationships with Ananta and its principals.

51. As a result of Weaver's wrongful conduct and interference, Ananta's business relationships have been damaged and materially interfered with.

52. Furthermore, Weaver evidently believes that he could do as he pleased with the leases presented to him by Ananta. At one point, Weaver informed Ananta's representative that, "I have ten years to do whatever I want with" the leases. Weaver's attitude toward LNG's obligations under the Agreement may help explain LNG's ongoing, repeated failures to deliver.

**Ananta Takes Action to Stop the Misconduct**

53. Ananta has made substantial efforts – and showed commendable patience – to try to resolve the issues profiled by this lawsuit.

54. Ananta has made many efforts to get LNG to take responsibility for its actions and proceed with servicing the accounts, to no avail.

55. When LNG failed to correct its actions, Ananta resorted to stopgap, interim solutions to try to make the projects work.

56. In the several months since this dispute began in earnest, LNG still has failed to

complete a single project. Only two stations have been installed in total, on a project that called for four (4) total stations to be installed.

57. Furthermore, in August 2023, Ananta, through counsel, prepared and provided to LNG a draft settlement agreement to address the parties' dispute and to clarify the relationship going forward.

58. LNG failed to meaningfully respond to those efforts, and has not made any material effort to remedy the wrongs LNG committed against Ananta.

59. After those efforts failed, in light of the unwithdrawn threat from Mr. Weaver that he believed Ananta would be committing tortious interference by communicating with its clients/customers regarding LNG, and because of LNG's ongoing failure to perform under the Agreement, Ananta must bring this action to vindicate its rights, remedy its damages, and clarify Ananta's rights and obligations in connection with the Agreement.

**FIRST CLAIM FOR RELIEF**
**Breach Of Contract**
**(Against LNG)**

60. Plaintiff repeats and realleges each and every allegation contained in the above paragraphs of this Complaint as though fully set forth herein.

61. On March 28, 2023, the parties entered into a valid, enforceable, and unequivocally binding contract, the Agreement, and which is made a part of this Complaint and incorporated herein by reference.

62. Plaintiff agreed to use its substantial efforts and expertise, and its outstanding reputation among its clients and customers, in connection with the performance of the Agreement, in full consideration for this contract.

63. In exchange for Plaintiff agreeing to perform services under the Agreement, Defendant agreed to pay Plaintiff for its services and to perform work itself under the Agreement, namely, installing electric vehicle charging stations at the locations identified and

sourced by Plaintiff, and in connection with the leases obtained by Plaintiff and provided to Defendant.

64. Plaintiff has fulfilled its obligations under the Agreement.

65. Specifically, Plaintiff sourced and presented to Defendant ten (10) leases that have been fully executed. And Plaintiff has also sourced and presented to Defendant an additional seventy-one (71) leases that Defendant has failed to act upon.

66. Defendant materially and substantially breached the contract on numerous dates by failing to make payment thereunder, and by failing to proceed with executing valid, partially executed leases presented to it by Ananta.

67. As a result of Defendant's breaches described above, Plaintiff has sustained damages.

68. Plaintiff's damages flow directly from and are the natural and probable consequences of Defendant's breach.

**SECOND CLAIM FOR RELIEF**
**Breach Of Covenant Of Good Faith And Fair Dealing**
**(Against LNG)**

69. Plaintiff repeats and realleges each and every allegation contained in the above paragraphs of this Complaint as though fully set forth herein.

70. Implied in every contract under the laws of the Commonwealth of Massachusetts is a covenant of good faith and fair dealing.

71. Under the covenant, it is implied that "that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *See, e.g., Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471–72 (1991).

72. The purpose of the Agreement was to enable, encourage, and compensate Ananta for its media outreach, marketing, and procurement services in obtaining clients and

customers for LNG's electric vehicle charging stations.

73. In connection with that purpose, the Agreement provided that Ananta would be paid for each vehicle charging station that was installed at a client/customer location. *See* Agreement, Ex. A, Service Fees and Bonus ¶ 1.

74. The Agreement additionally provided an escalating structure of payments to compensate Ananta for its successes, including certain thresholds at which Ananta could earn bonuses under the Agreement. *See* Agreement, Ex. A, Service Fees and Bonus ¶¶ 2, 3.

75. The Agreement requires LNG to install the charging stations within *six* (6) months of Ananta presenting it with a lease executed by a client/customer. But throughout the term of the contract LNG has dithered in the projects, refusing or failing to sign and act upon leases with clients/customers presented to LNG by Ananta.

76. LNG delayed and failed to proceed with executing the leases because it sought to avoid having to pay Ananta under the Agreement's terms providing staggered milestone payments for Ananta's success.

77. LNG's failure or refusal to proceed with executing the leases was done with the intent to, and had the effect of, frustrating the purpose of the Agreement and destroying Ananta's right and expectation to benefit thereunder.

**THIRD CLAIM FOR RELIEF**
**Unjust Enrichment**
**(Against LNG)**

78. Plaintiff Ananta repeats and realleges each and every allegation contained in the above paragraphs of this Complaint as though fully set forth herein.

79. Ananta, in connection with performing under the Agreement, conferred a substantial, material benefit upon LNG through Ananta's significant media outreach, marketing, and procurement services, which Ananta performed over the course of the six months that the Agreement was in effect, since March 28, 2023.

80. LNG appreciated and had knowledge of the benefits it received from Ananta's labors on its behalf.

81. LNG accepted the benefits provided by Ananta, both directly and indirectly, though its own execution of several leases in accordance with the Agreement, and by way of the significant media outreach and marketing efforts made by Ananta on LNG's behalf.

82. LNG, despite receiving the benefits of Ananta's services, has retained the benefit and has not paid Ananta anything for Ananta's services.

83. It would be unjust and inequitable for LNG to retain the benefits it received and accepted from Ananta, through Ananta's significant efforts.

**FOURTH CLAIM FOR RELIEF**
**Tortious Interference**
**(Against LNG and Taylor Weaver)**

84. Plaintiff Ananta repeats and realleges each and every allegation contained in the above paragraphs of this Complaint as though fully set forth herein.

85. Having overseen LNG's failures to deliver on its contracts, Weaver began contacting Ananta's clients and customers to attempt "damage control" by laying the blame for LNG's failures upon Ananta.

86. Weaver knew that Ananta had pre-existing, ongoing, and potential future business and contractual relationships with the third parties that Weaver was communicating with and disparaging Ananta and its principals.

87. For example, in or about August 2023, Weaver said to a long-time Ananta customer – identified as the "Charge CEO" –that Ananta was to blame for the project delays, and that Ananta was incapable of completing the project because its principals were incompetent and inefficient.

88. At the time Weaver was making these false statements, he knew that Ananta's only obligation under the Agreement was to market and to deliver signed leases to LNG.

89. Yet, Weaver improperly placed the blame for LNG's utter failures in completing the project on Ananta, falsely stating that Ananta was responsible for the delays and failures in delivering on the projects.

90. Weaver thus knowingly and with malicious intent, and unrelated to a legitimate corporate interest, attacked Ananta and its principals by making untrue statements regarding the business relationship and Ananta's relationship to and obligations under the project.

91. Ananta was harmed by Weaver's intentional, tortious interference with Ananta's business relationships, including its relationship with the "Charge CEO".

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Ananta respectfully requests judgment against Defendants LNG and Weaver as follows:

A. Entering judgment in favor of Plaintiff;

B. Awarding Plaintiff its damages, in an amount to be determined at trial;

C. Awarding Plaintiff its share of the 20% of profits from installed charging ports and $300 per port installed on the projects, in accordance with the Agreement, for the lifetime of those installed ports; and

D. Awarding Plaintiff such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff respectfully demands a jury trial on all appropriate issues pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

DATED: September 29, 2023

Respectfully submitted,

*/s/ Benjamin W. O'Grady*

Benjamin W. O'Grady, BBO #696068
bogrady@grsm.com
857-263-2000
Gordon Rees Scully Mansukhani, LLP
28 State Street, Suite 1050
Boston, MA 02109

Mark T. Doerr (*pro hac vice application forthcoming*)
**GREENSPOON MARDER LLP**
590 Madison Avenue, Suite 1800
New York, New York 10014
Telephone: 212.524.5000
Email: mark.doerr@gmlaw.com

***Attorneys for Ananta Sustainability, LLC***